UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                         :

KRISTOF BIRKO                          :

                    Plaintiff,      :

                                             :

                  -against-       :

POLICE OFFICER JASON COHEN, Shield   :
no. 1750; POLICE OFFICER RUPERTO     :
VALENTIN, Shield no. 3799; POLICE       :
OFFICER DAVID COWAN (Tax no. 923710);  :
POLICE OFFICER JOHN PARENTE, (Tax    :
no. 933145); POLICE OFFICERS "JOHN     :
DOES" 1-6, individually and in their official   :
capacities (the names John Doe being      :
fictitious, as the true names are presently    :
unknown),                              :

                      Defendants.    :
------------------------------------------------------------ X

**FIRST AMENDED COMPLAINT**

CV-13-6631 (AAR)(VVP)

JURY TRIAL DEMANDED

Plaintiff, KRISTOF BIRKO, by and through his attorneys, **THE LAW OFFICES OF KENNETH F. SMITH, PLLC**, complaining of the defendants herein, respectfully shows the Court and alleges:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which the plaintiff seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and1983; by the United States Constitution, including its Fourth and Fourteenth Amendments, and by the laws and Constitution of the State of New York.

2.     The claims arise from a July 11, 2013 incident in which officers of the New York City Police Department ("NYPD"), acting under color of state law,

intentionally and willfully subjected plaintiff to, *inter alia*, unlawful search and seizure of premises and person, unlawful detention, false arrest, assault, battery, false imprisonment and malicious prosecution.

3.     The plaintiff seeks monetary damages (special, compensatory and punitive) against defendants, as well as an award of attorney's fees and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

4.     Jurisdiction of this Court is invoked under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1981 and 1983.

5.     The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

6.     Venue herein is proper for the United States District Court for the Eastern District of New York under 28 U.S.C. §1391 (a), (b) and (c), in that a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## JURY DEMAND

7.     Plaintiff demands a trial by jury in this action.

## PARTIES

8.     Plaintiff KRISTOF BIRKO is a forty-six year old male who, at all times hereinafter mentioned, was and is a resident of the State of New York and the County of Kings.

9.     Defendants COHEN, COWAN, PARENTE, VALENTIN, and "JOHN DOES" 1-6 are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the City of New York and/or the New York City Police Department, a municipal agency of the City of New York.

10.    Defendants Cohen, Cowan, Parente, Valentin and "John Does" 1-6 are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of the City of New York, were acting for, and on behalf of, and with the power and authority vested in them by the City of New York and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

11.    Defendants Cohen, Cowan, Parente, Valentin and "John Does" 1-6 are sued in their individual and official capacities.

## STATEMENT OF FACTS

12.    On Thursday, July 11, 2013, approximately 5:30PM, defendants Cohen Cowan and Valentin, and other members of the New York City Police Department team they were working with, arrested plaintiff inside of his home at 254 Jackson Street, Kings County, NY.

3

13.     Plaintiff, who was then employed as an airport security agent at JFK International Airport, and who worked the 9pm to 5am shift, was asleep in bed in his bedroom when he was awakened by the sound of voices in the home he lives in with his family.

14.     Plaintiff opened his bedroom door to find defendant police officers in his home.  Without explaining their presence in the home, defendant police officers began aggressively questioning plaintiff, who as stated had just been abruptly awakened.

15.     Specifically, defendant police officers began questioning plaintiff regarding the whereabouts of "Chico", whom plaintiff knows to be Francisco Ocasio, the brother of plaintiff's girlfriend Lupe.

16.     Plaintiff told defendant officers that Ocasio did not live at the location, and that plaintiff did not know where Ocasio was.

17.     At that point, defendant officers indicated the bathroom door, which was closed, and through which could be heard the sound of water running. Defendant officers asked plaintiff who was in the bathroom.

18.     Plaintiff reiterated that he had been asleep and told officers he assumed it was his girlfriend Lupe Ocasio.

19.     Several moments later, the individual who defendant officers had been questioning plaintiff about (Ocasio) emerged from the bathroom—to the surprise of plaintiff, who assumed, having just been awakened, that it was his girlfriend.

20.    Defendant officers immediately arrested Ocasio (allegedly recovering narcotics on his person or within his wingspan).[1]

21.    At that point, defendant police officers accused plaintiff of having lied about Ocasio and of trying to "hide" Ocasio, and that as punishment, plaintiff would have to be arrested as well.

22.    Defendant officers then placed handcuffs tightly around plaintiff's wrists.

23.    Plaintiff protested that he hadn't lied, that he had repeatedly explained he just woke up and hadn't known Ocasio had been in the house. Defendant officers told plaintiff it was "too late".

24.    While several of defendant officers held the tightly-handcuffed plaintiff in the living room, one of the officers entered plaintiff's bedroom for a short time before emerging apparently holding something in his hand and saying something to the effect of "look what I found".

25.    Defendant officer did not actually reveal to plaintiff what he was holding in his hand, in spite of plaintiff's repeated protestation that he did not use drugs and there were no drugs in his room.

26.    Defendant officers then transported plaintiff a police station for "processing."

27.    Defendant Parente, as supervising Sargent, expressly authorized the arrest of plaintiff by defendant officers and expressly authorized the paperwork defendant officers prepared incident to the arrest of plaintiff.

---

[1] Ocasio was arrested under Arrest number K13662566.  Also arrested was Wayne Hogan (K13662554). The prosecution theory in the Hogan case was that Hogan had been observed exchanging heroin, marked "purple label" for currency handed to Hogan by Ocasio.

28.     Plaintiff was arraigned on Friday, July 12, 2013, and charged (on the same Criminal Court Complaint as co-defendant Francisco Ocasio) with two counts of Criminal Possession of a Controlled Substance in the Seventh Degree, NY Penal Law § 220.03, a Class "A" misdemeanor.

29.     The criminal court complaint was sworn out by Ruperto Valentin and alleges the recovery of methadone and heroin at the location, specifically charging plaintiff with possessing "a glassine envelope stamped 'Purple Label' containing heroin residue from defendant Birko's bedroom."

30.     Plaintiff did not, in fact possess any controlled substances.

31.     At the arraignment, and after plaintiff had been in custody more than twenty-four hours, plaintiff's case was Adjourned in Contemplation of Dismissal, under NY CPL 170.55.

32.     Upon the application of defense counsel, and to preserve plaintiff's job as a security officer at JFK Airport, the Honorable Judge John Montelione ordered immediate sealing of the case.

33.     At the time of this incident, plaintiff had never before been arrested, convicted, detained, and indeed, had no prior contacts with the criminal justice system.

34.     As a security officer employed by a private security corporation assigned to JFK International Airport, plaintiff had to undergo preliminary and regular drug testing, and had passed a background check conducted per Federal regulations. In addition to regular drug screening, plaintiff was also subject to random drug

screening.  Plaintiff had never tested positive for controlled substances during any of the regular or random drug screenings he had submitted.

35.    However, when plaintiff reported to work on July 23, 2013, he was told his position had been terminated based upon the July 11, 2013 arrest.

36.    At all times during the events described, the defendant police officers were engaged in a joint venture.  The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.  They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

37.    During all of the events described, defendants acted maliciously and with intent to injure plaintiff.

38.    As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a)  Violation of his right, pursuant to the Fourth Amendment of the United States Constitution, to be free from an unreasonable search and seizure of his person and his home;

   b)  Violation of his right, pursuant to the Fifth Amendment of the United States Constitution, not to be deprived of his liberty without Due Process of Law.

   c)  Violation of his New York State Constitutional rights under Article 1, §12, to be free from an unreasonable search and seizure;

d) Violation of his right to Due Process of Law pursuant to Article 1, §6 of the New York State constitution and the Fourteenth Amendment to the United States Constitution.

e) Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience and anxiety;

f) Loss of liberty;

g) Loss of plaintiff's employment solely as a result of defendants' malicious, retaliatory and illegal actions;

h) Loss of current and future earnings

## FIRST CLAIM
## Unlawful Stop and Search

39. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

40. Defendants violated the Fourth and Fourteenth Amendments of the United States Constitution because they stopped and searched plaintiff without reasonable suspicion.

41. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages alleged above

## SECOND CLAIM
## False Arrest

42. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

8

43.   Defendants violated the Fourth and Fourteenth Amendments of the United States Constitution because they arrested plaintiff without probable cause.

44.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### THIRD CLAIM
### Unreasonable Force

45.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

46.   The defendants violated the Fourth and Fourteenth Amendments of the United States Constitution because they used unreasonable force on plaintiff.

47.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### FOURTH CLAIM
### Denial of Constitutional Right to Fair Trial

48.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

49.   The individual defendants created false evidence against plaintiff.

50.   The individual defendants forwarded false evidence to prosecutors in the Kings County District Attorney's office.

51.   In creating false evidence against plaintiff, and in forwarding false information to prosecutors, the individual defendants violated plaintiff' constitutional right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

52.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Failure to Intervene

53.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

54.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

55.     Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

56.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
### Falsification of Evidence under 42 U.S.C. § 1983

57.     The preceding paragraphs are here incorporated by reference.

58.     Defendant Police Officers and John Does are liable to plaintiff because they intentionally conspired to fabricate evidence against plaintiff, depriving plaintiff of liberty without due process of law.

59.     Furthermore, the defendants violated the law by making false statements by drafting and/or signing sworn criminal court complaints and false police reports.

60. Furthermore, the individual defendants violated the law by manipulating evidence to attempt to obtain a prosecution and unjust conviction, while performing the function of investigators.

61. The individual defendants were on notice that creating fabricated evidence is a clear violation of law because it well established that individuals who knowingly use false evidence at trial to obtain a conviction act unconstitutionally and that this is redressable in an action for damages under 42 U.S.C. § 1983.

62. The individual defendants are also liable to plaintiff because they intentionally created false information likely to influence a fact finder's or jury's decision by, inter alia, forwarding false information to prosecutors, drafting and signing sworn criminal court complaints and police reports, omitting and/or manipulating evidence, fabricating testimony and evidence, suppressing and concealing exculpatory material and evidence, and forwarding and presenting false information to a court thereby violating plaintiff's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

63. As a direct and proximate result of the abuse of authority detailed above, plaintiff sustained the damages stated.

### SEVENTH CLAIM
**(Deprivation of Federal Civil Rights under the United States Constitution and 42 U.S.C. §§ 1981 and 1983)**

64. The preceding paragraphs are here incorporated by reference.

65. By their conduct and actions in unlawfully entering the residence of plaintiff, detaining plaintiff, searching plaintiff, arresting plaintiff, imprisoning

plaintiff, in fabricating evidence against plaintiff, and in failing to intercede on behalf of plaintiff and protect him from the unjustified and unconstitutional treatment he received at the hands of other defendants, defendant Police Officers, acting with animus, and under color of law and without lawful justification, intentionally, maliciously, and with deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §§ 1981 and 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

66.     As a result of the foregoing, plaintiff was deprived of his liberty, suffered physical pain, emotional distress, great anxiety and humiliation, fear and damage to his reputation, loss of his employment, loss of current and future earnings, and was otherwise damaged and injured.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

a) In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's Causes of Action;

b) Awarding plaintiff punitive damages in an amount to be determined by a jury for each of plaintiff's Causes of Action;

c) Awarding plaintiff reasonable attorney's fees, costs and disbursements of this action; and

d)  Granting such other and further relief as this Court deems just and proper.

Dated:  Brooklyn, New York
          April 30, 2014

Respectfully submitted,

**THE LAW OFFICES OF
KENNETH F. SMITH, PLLC**
Counsel for the Plaintiff

/S/ KENNETH F. SMITH

By: Kenneth F. Smith (KS0788)
16 Court Street, Suite 2901
Brooklyn, NY 11241
(646) 450-9929
(646) 514-4524 (FAX)